**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. 24 – 226 - 11  (BAH) |
| | : | |
| AHMED  BAILEY | : | |
| | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

Ahmed Bailey, through undersigned counsel, respectfully submits this sentencing memorandum, requesting that the Court impose a sentence of 24 months, along with any conditions the court deems appropriate.  Counsel submits that such a sentence best balances all of the sentencing factors in Mr. Bailey's case, including the need to provide him with important educational, vocational, and rehabilitative treatment and programming in the most effective manner.  See, 18 U.S.C. 3553(a)(2)(D).  In support of this request counsel submits a letter from Mr. Bailey [Exhibit 1]; character letters [Exhibit 2]; and other relevant exhibits.

## PROCEDURAL BACKGROUND

On or about May 15, 2024, a search warrant was executed at Ahmed Bailey's residence.  A small quantity of cocaine and two firearms were recovered during the search – one registered and one not registered.  Mr. Bailey was arrested and charged by Complaint with conspiracy to distribute and possess with intent to distribute cocaine.  His arrest was based on the investigation resulting in the indictment in *United States v. Bassil, et al*., Case No. 24-226.  Mr. Bailey was detained pending a detention hearing.  On or about May 23, Mr. Bailey was named in a superseding indictment filed in the *Bassil* case.

On May 24, 2024, Magistrate Judge Harvey conducted the detention hearing in the case, and released Mr. Bailey under strict conditions to be supervised by the Pretrial Services Agency – Heightened Supervision Program ("HISP").

1

On or about June 13, 2024, a second superseding indictment was returned in the case.  Two charges were added against Mr. Bailey based on the items recovered during the execution of the search warrant at his residence – possession with intent to distribute cocaine base and possession of a firearm in furtherance of a drug trafficking offense.

Mr. Bailey made timely efforts to accept responsibility and resolve his case, agreeing to toll the speedy trial clock while those efforts were undertaken.  He did not seek to file pretrial motions or set a trial date.  The parties engaged in plea negotiations and reached a plea agreement.  However, in light of Mr. Bailey's exceptional compliance with his HISP conditions and his employment with the Department of Public Works, undersigned counsel engaged in further discussions with the government, hoping to have them agree to allow Mr. Bailey to object to the government's request for detention pending sentencing.  Once those discussions were exhausted, the plea hearing was scheduled.

Mr. Bailey accepted the government's Rule 11(c)(1)(C) offer.  Under the agreement he agreed to plead guilty to a two count Superseding Information charging him with 1) conspiracy to distribute and possess with intent to distribute less than 50 grams of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 846; and 2) possession of an unregistered firearm in violation of 7 D.C. Code §§ 2502.1 and 2507.06.   The parties agreed to propose a sentencing range of 24 to 48 months.  On March 6, 2025, Mr. Bailey appeared before Your Honor and pled guilty pursuant to the written plea agreement.  Consistent with the plea agreement, Mr. Bailey was detained following the guilty plea.  Sentencing is scheduled on July 24, 2025.

\

**PSR  SENTENCING GUIDELINES CALCULATIONS**:

Under the plea agreement the defendant is accountable for 50 grams of cocaine as relevant conduct for Count One.  According to the Presentence Report ("PSR"), the base offense level for Count One under U.S.S.G. § 2D1.1 is 12.  Two levels are added based on the possession of a firearm.  After the two level reduction for acceptance of responsibility, the total offense level is 12.  [*See* PSR ¶¶ 97-106].   Mr. is in Criminal History Category I, as he has no prior contacts with the criminal justice system - juvenile or adult.  [*See* PSR ¶¶ 109-111]   Based on offense level 12 and Criminal History Category I, the PSR found that the defendant's advisory guideline range for Count One is 10 to 16 months. [*See* PSR ¶ 149]  Count Two is a D.C. Code misdemeanor, and therefore the D.C. Voluntary Guidelines do not apply. [*See* PSR ¶ 108]  There are no disputes regarding the PSR or the guidelines calculation for the Court to resolve.

**DEFENSE COUNSEL'S RECOMMENDED SENTENCE OF 24 MONTHS IS SUFFICIENT BUT NOT GREATER THAN NECESSARY TO ACHIEVE THE OVERALL GOALS OF SENTENCING IN THIS CASE:**

**Concise Sentencing Argument:**

Under 18 U.S.C. § 3553(a), the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph [(a)](2) [of § 3553]." When sentencing a defendant, the Court  must consider the kinds of sentence and sentencing range established under the sentencing guidelines . . . ." *Gall v. United States*, 552 U.S. 38, 49-51 (2007).  Once the Court calculates the sentence that the Guidelines recommend, the Court must then "make an individualized assessment," considering the remaining factors set forth in § 3553(a). *Gall*, 552 U.S. at 50.   Pursuant to 18 U.S.C. § 3553(a), the Court, in determining the particular sentence to be imposed, must consider, *inter alia* –

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;  and

(2) the need for the sentence imposed:

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

In addition, Section 3582 of Title 18 provides that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, **recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.** (Emphasis added).

Counsel respectfully submits that the factors under § 3553(a) mitigate in favor of a  24 month sentence – which is the bottom of the agreed-upon sentencing range, and is also well below the applicable guideline range for the drug conspiracy charge in his case.  Moreover, such a sentence would appear to be proportionate with other similarly situated defendants, as it is about 14 months greater than the average and median sentences for  drug conspiracy defendants with the same offense level and criminal history category.  (*See*, Judiciary Sentencing Information ("JSIN") @ PSR ▐ 182)  In addition, Mr. Bailey's participation in the offense seems to have been very similar to co-defendant Abrian Walker, who received a 6 month prison term. [1]

---

[1]  Mr. Bailey and Mr. Walker were not charged in the initial Indictment.  Both were charged by Complaint and later included in the Superseding Indictments.  The main difference appears to be that two firearms were recovered from Mr. Bailey's residence, but there is significant mitigation evidence regarding that aspect of the case.  Specifically, Mr. Bailey was registered with the MPD for one of the guns. [See, Exhibit 3 – MPD Firearms Registration Certificate and Training Certificates]  According to Mr. Bailey's father, he went through the Metropolitan Police Department training and registration process with the assistance and supervision of his father, who was going through the process with him. Their goal was to be able to purchase a gun to have for protection in their home. Significantly, the gun and all the ammunition were recovered in a gun box maintained in his father's room.  According to his father, the ammunition was used at the shooting range, but the gun did not leave the home.

Thus, while the offense was serious, the recommended 24 month sentence is more than sufficient to accomplish the overall goals of sentencing in this case.

**a.  Defendant's Background, History, and Characteristics and Nature of Offense:**

Defendant's background, history, and characteristics are very strong, and clearly support a sentence at the bottom of the agreed-upon range.  Apart from his involvement in this case, he has consistently shown himself to be a very decent young man with a great deal of potential. He was very active in sports when he was growing up.  He overcame learning disabilities and graduated from Friendship Collegiate Academy in the District of Columbia, where he played interscholastic football.  He was an accomplished athlete and won a number of awards.  Like many athletes, sports helped motivate him to succeed in school and in his other endeavors. He obtained a job every summer since 2016 through the D.C. Youth Summer Employment Program, and participated in Online Orientation hoping to again obtain employment for the summer of 2024.  [See, Exhibit 4 – Youth Programs Certificate]  While he was an average student, he was a very good football player, and earned a scholarship to attend college at Delaware State University.  [ See, Exhibit 5 – Delaware State Roster and 24 7 Sports Ranking ] He attended college for two years, until there was a coaching change for the football team, and the new coach took away half of his scholarship.   Unable to afford college without the scholarship, he made the difficult decision to leave college and return to the District of Columbia.

Sadly, when he came home, he began spending time in his old neighborhood, and his curiosity and interest got the best of him.  Eventually he became involved in the offense conduct, which resulted in his arrest in this case.  Although the offense in this case is serious, and involves

the possession of a firearm, it is also important to note that Mr. Bailey was not involved in any violence. [2]

It is also noteworthy that Mr. Bailey's curiosity about firearms stems in large part from his father's decision to spend time taking him to a shooting range and signing him up to get his training and certifications so he could apply for a license to possess a firearm. *See*, n. 1, Supra. Significantly, the trips to the shooting range and the firearms training preceded his involvement in the offense.

Counsel would also note that Mr. Bailey played a lesser role than most of the others involved in the conspiracy,  and was involved for a shorter period of time. [3]  In addition, although the offense conduct spanned a period of months, it seems to have been aberrational when viewed in light of his character, background, education, work history, and accomplishments prior to the offense.   Thus, although the offense was serious, it does not call for a sentence greater than 24 months.

Finally, Mr. Bailey showed a great deal of character, and a high level of responsibility following his arrest, supporting the notion that his brief time involved in the conspiracy was a bit

---

[2]  Counsel would note that the government's sentencing memorandum attempts to connect him indirectly to an April 19, 2024 conversation "presumably" about a car being "parked" somewhere. The assertion is based on the government's belief about what a nearly inaudible conversation "sounded like".  Defendant maintains that the government is mistaken. Counsel would note that the recording is relatively brief and extremely difficult to hear.  Moreover, as the government concedes, they are representing what they presume and what it "sounds like", which is far too tenuous and unreliable to be proffered and relied upon for sentencing consideration.  The government also references another conversation from April 26, 2024.  On that date, there are three participants talking over each other and it is mostly inaudible.  Again, the government suggests that defendant said words "to the effect", suggesting a connection to a gun.  However, again, defendant insists the government is wrong.  Like the first proffer, the government is providing its self-serving interpretation of the meaning of words that apparently cannot be determined.  Thus, this is also too tenuous and unreliable for sentencing consideration.

[3]   Counsel would note that one or more of the surveillance videos from the discovery seems to confirm that he was relatively new to these activities, as someone could be heard offering to show him how to cook cocaine if he was interested.

6

aberrational. He was released to HISP supervision, ordered to stay away from the co-defendants, and comply with the very strict conditions of the HISP program, including the GPS/ location monitoring. As the Court knows, he was fully compliant, and was always where he was supposed to be. He worked hard to find a job, and was able to work full-time at the D.C. Department of Public Works (DPW) for five months. He worked from 6:00 a.m. until 3:00 p.m. Monday through Friday. He had no monitoring violations whatsoever. His PSA officer conveyed to counsel that based on her dealings with Mr. Baily she was extremely impressed with his overall adjustment, compliance, attitude, and the goals he discussed with her. And when it came time to plead guilty, Mr. Bailey was well-aware that he agreed not to oppose detention in the plea agreement. Counsel was impressed with Mr. Bailey's maturity in dealing with the plea agreement, and the knowledge that he would be stepped back. He came to court ready to begin serving his sentence – something that defendants often find very difficult.

Mr. Bailey has now timely accepted responsibility for his involvement; has made extremely positive adjustments in his life since his arrest; and appears to be well on his way to putting this case successfully behind him. He is a decent, responsible young man with a great deal of potential. Considering the mitigating factors surrounding the nature of the offense, and the defendant's very strong background, history, and characteristics, a sentence at the bottom of the agreed-upon range is the appropriate sentence.

    **b.**    <u>**Defendant's Youth and Immaturity is a Mitigating Factor**</u>**:**

Counsel further submits that it is reasonable for the Court to consider the defendant's youth as a sentencing factor. Notwithstanding the he has shown himself to be quite responsible, courts have recognized that young people are generally less responsible than the average adult criminal because ". . . [a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These

7

qualities often result in impetuous and ill-considered actions and decisions. The relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside." See, Roper v. Simmons, 125 S. Ct. 1183, 1195-96 (2005) (death penalty case recognizing youth and immaturity as a mitigating factor). "[Y]outh is more than a chronological fact. It is a time and condition of life when a person is most susceptible to influence and to psychological damage . . . ." Gall v. United States, 128 S.Ct. 586, 601-602 (2007) (citation omitted). While Mr. Bailey was 23 at the time of the offense, and the brains of many young men are still developing at that age. Thus, it is reasonable to view the defendant's youth and immaturity as a mitigating factor. Id.

   **c.** **Kinds of Sentences Available As a Factor.**

Counsel submits that the sentencing options is also relevant to the sentencing determination in the case. Considering the plea agreement and the government's recommendation, the court will have to impose a prison sentence in the range of 24 to 42 months. One of the goals of sentencing is to provide for the defendant's need for educational, vocational, and rehabilitative treatment in the most effective manner. The issue in this case is that Mr. Bailey's needs are best served by a sentence at the low end of the range. First, a longer sentence will likely mean a designation to a higher security BOP facility, where he will have less opportunity for education or programming and will be housed primarily with inmates who have far greater criminal backgrounds. It is particularly important in this case because of Mr. Bailey's age. Inmates can be assessed between O and 8 points in the classification process based on their age. The points are assessed automatically, regardless of the defendant's track record for reliability, etc. Mr. Bailey is 24 years old, and under the BOP's Program Statement for Designation and Classification's (P5100.08, Ch. 4, pp. 16, 37), an inmate who is age 24 or younger will automatically be assessed 8 points in the classification process. Since defendant's normally get an additional 5 or 7 points for the severity of the offense

as part of the calculation, those two scores alone will put Mr. Bailey very close to 15 points, which is the cutoff between low and medium security placements.  [See, Exhibit 6 – BOP Classification Template and Security Level Chart ]  There is little margin of error for a young person like Mr. Bailey, who is 24 years old. However, one of the other factors considered during the classification and designation process is the number of months left before an inmate's release date.  Thus, a lower sentence could be the difference in a getting a designation to a lower security facility, particularly in a close case.

In addition to the lack of programming at higher security facilities, Mr. Bailey will be forced to fend for himself among older, more savvy, and more dangerous inmates.  Such conditions are simply not healthy for a young man making efforts to get and stay on the right track. Thus, a sentence that warehouses Mr. Bailey for a longer period of time, particularly if it results in a designation to a higher security facility, is counter-productive.  In addition, it sends the wrong message to the defendants, like Mr. Bailey, who do everything in their power to do things responsibly and properly after an arrest.

Therefore, counsel urges the court to consider how the length of the sentence impacts the conditions under which Mr. Bailey will be required to serve his sentence.  A longer sentence and a designation to a higher security facility will expose Mr. Bailey to more dangerous individuals and will provide fewer program opportunities.  A shorter prison sentence, on the other hand, will give Mr. Bailey the best chance to continue on the successful track he is currently on, and also to get back to the community soon enough to try to take advantage of education and employment opportunities he set up while on release in this case.

Wherefore, counsel submits that consideration of the sentencing options and the potential effects on Mr. Bailey's place and conditions of confinement, and on his continuing rehabilitative efforts, further suggest that a 24 month prison sentence is appropriate.

**18 U.S.C.  § 3553(a)(2) Sentencing Purposes.**

18 U.S.C. § 3553(a)(2) also directs the Court to consider  1) The need for the sentence imposed:  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the defendant; and 4) to provide the defendant with the needed educational and vocational training, and / or other correctional treatment in the most effective manner.  Defendant submits that the recommended sentence is also completely consistent with these sentencing purposes.

As discussed above, the plea agreement calls for a prison term, and the question therefore becomes whether a 24 month prison sentence is sufficient, but not greater than necessary, to effectuate the overall goals of sentencing in this case.  Counsel submits that the answer is yes.  It is a significant punishment for a 24 year old man with no prior contacts with the criminal justice system, and who played a significantly lesser role in the conspiracy.  It is sufficient to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and provide needed rehabilitative treatment and resources in the most effective manner.

The second purpose of sentencing is to "afford adequate deterrence." *Id.* at § 3553(a)(2)(B). While "[p]rison is an important option for incapacitating and punishing those who commit crimes," evidence shows that lengthy prison sentences do not have a "chastening" effect and "produce at best a very modest deterrent effect." *Five Things About Deterrence*, Nat'l Inst. Justice, U.S. Dep't of Justice (May 2016) at 1-2.  Research shows conclusively that "[t]he *certainty* of being caught is a vastly more powerful deterrent than the punishment," that "[s]ending an individual convicted of a crime to prison isn't a very effective way to deter crime," and that "[i]ncreasing the severity of punishment does little to deter crime." *Id.* (emphasis in

original).   Significantly, "the crime prevention benefit falls far short of the social and economic

costs," *id.* at 2, especially in light of the fact that U.S. Sentencing Commission "research has

demonstrated that reductions to sentence length and time served do not harm public safety,"

*Transforming Prisons, Restoring Lives*, Charles Colson Task Force on Federal Corrections,

Urban Inst. (Jan. 2016) at 21

  Moreover, it seems evident that the defendant's arrest and detention in this case has

already had the appropriate deterrent effect, and that a longer sentence is not necessary to

address specific deterrence.   Mr. Bailey's arrest and prosecution seems to have gotten his full

attention.   From the beginning, he has been unequivocal about accepting responsibility for his

misconduct and resolving his case without a trial.   He has taken advantage of the opportunities

he has had to work and develop potential referrals for future employment.   He has re-established

contacts with youth sports organizations so he can mentor others.   He has remained in steady

contact with his family and has re-built the relationships that will be important to his success

when he comes home. Thus, the recommended sentence more than adequately accounts for

specific deterrence.

  Finally, counsel would note that the recommended sentence recognizes the defendant's

fulsome and genuine efforts to begin atone for some very serious mistakes, and to begin finding

his new path to success, having been forced to leave college a couple years ago.   He is committed

to hard work, and wants to get back to school, if possible, to get his degree.   He wants to work

with disadvantaged youth through sports to try to help them find a path to success (without

making the mistakes he made).   Clearly, he will be far better off under the supervision of

Probation, rather than the BOP.   Simply put, Mr. Bailey can not count on having meaningful or

effective programming opportunities in the BOP.   Thus, the sooner he starts his period of

supervised the release the better the outcome will be for him.   Accordingly, defense counsel's

recommended sentence makes the most sense in this case.

For these reasons, counsel urges the court to find that a 24 month sentence is sufficient, but not greater than necessary to effectuate the sentencing goals in this case, including the need for the sentence to provide rehabilitative and correctional treatment in the most effective manner. *See*, 18 U.S.C. 3553(a)(2)(D).

## **CONCLUSION**

Mr. Bailey has been extremely responsible in the way that he has handled himself throughout the case, and has separated him from many, if not most, criminal defendants. He is genuinely remorseful and apologetic for letting his family and community down. He was deeply hurt when his grandmother passed unexpectedly and he was unable to pay his respects in person because he is incarcerated. Yet he has not let that get him down. He sees the good in things around him and maintains that he wants to make a difference in the future. He is a decent, thoughtful, caring young man, and he is committed to being successful and to mentoring others in the community. [See, Exhibit 1 – Defendant's Letter ]

He is a true first offender – and one who had the appropriate reaction to his first contact with the criminal justice system. While Mr. Bailey's youth. naivety, and curiosity seemed to play a role in his offense conduct, he has since moved on with a sense of resolve and a maturity beyond his years. His reaction to his arrest and prosecution is one we always hope for from criminal defendants, but often do not see. He was responsible and motivated enough to promptly begin to put his life back on a successful track – again something we often do not see. He worked long hours at a government job, spent a lot of time at home with family, and remained 100% compliant with his release conditions. He has the strong support of his family and other supporters, which is very important for his continued success. Most importantly, he continues to show the commitment to succeed, and the high level of responsibility, he has demonstrated for most of his adolescent and adult life.

In sum, for all the reasons discussed herein, counsel respectfully submits that a 24 month sentence is reasonable and appropriate in this case. Such a sentence provides just punishment without over-institutionalizing a young man who is showing by his actions that he has great promise and potential.  Such a sentence strikes the proper balance of all the sentencing factors and purposes.  It will also put the defendant in a better position to succeed when he returns home  – which will benefit both the defendant and the community.

**BOP Issues:**

Defendant is still considering which BOP facilities he will ask the Court to recommend. Counsel expects him to provide such requests at the sentencing hearing.  In the meantime, counsel would make the following general requests related to the BOP designation for Mr. Bailey:

1)  A judicial recommendation for a low or minimum security facility;

2)  A judicial recommendation for the BOP to promptly consider Mr. Bailey for participation in the First Step Act Earned Time Credits program;

3)  A judicial recommendation that the BOP consider Mr. Bailey for placement in a Residential Reentry Center as soon as he is eligible, as he will benefit from earlier access to the BOP's reentry services.

Respectfully submitted,

 /s/   *Howard B. Katzoff*
Howard B. Katzoff
717 D Street, N.W., Suite 310
Washington, D.C.  20004
katzoffh@aol.com
(202) 783-6414
Counsel for Ahmed Bailey

## **CERTIFICATE OF SERVICE**

I hereby certify that this __15th____ day of ___July_____, 2025,  a copy of Defendant's

Sentencing Memorandum was filed and via the Electronic Court Filing System (ECF), causing a

copy to be served on government counsel, and by electronic mail to United States Probation

Officer Kristina Centanni.

                              __/s/ *Howard  B. Katzoff*_____
                              Howard B. Katzoff